# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| MICHAEL P. AUDETTE,<br><br>                Plaintiff,<br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. 3:14-cv-05522-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On August 23, 2011, plaintiff filed an application for disability insurance benefits and filed an application for SSI benefits on July 21, 2011, alleging in both applications that he became disabled beginning September 15, 2009. *See* Dkt. 9, Administrative Record ("AR") 14. The application was denied upon initial administrative review on November 23, 2011 and on reconsideration on March 14, 2012. *See id.* A hearing was held before an administrative law

ORDER - 1

judge ("ALJ") on December 5, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 40-74.

In a decision dated January 11, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 11-32. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 14, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481. On June 30, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkts. 1, 3. The administrative record was filed with the Court on September 19, 2014. *See* Dkt. 9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in discounting plaintiff's credibility; (2) in assessing plaintiff's severe impairments under Listing 12.04; (3) in evaluating the medical evidence in the record; and (4) in assessing plaintiff's residual functional capacity ("RFC"). For the reasons set forth below, the Court agrees the ALJ erred in evaluating the medical evidence, in assessing plaintiff's severe impairments under Listing 12.04, and in assessing plaintiff's RFC, and therefore in determining plaintiff to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision to deny benefits should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the

ORDER - 2

"substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

ORDER - 4

omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Plaintiff argues that the ALJ erred by giving limited weight to examining psychologist Dr. Russell Bragg, Ph.D. *See* Dkt. 12, pp. 15-16. Dr. Bragg submitted an evaluation in May of 2012, which was based on information obtained from a clinical interview with a mental status examination ("MSE") of plaintiff and Dr. Bragg's review of an evaluation report completed by Pamella Davick, M.S. AR 597-602. Dr. Bragg opined that plaintiff has significant limitations in his ability to understand, remember and persist in simple tasks, perform routine tasks without undue supervision, make simple work-related decisions, be aware of normal hazards and take appropriate precautions, and ask simple questions or request assistance. AR 602. Dr. Bragg also found plaintiff has marked limitations in his ability to understand, remember and persist in complex tasks, perform activities within a schedule and maintain regular punctual attendance,

ORDER - 5

learn new tasks, communicate and perform effectively in a work setting with public contact, complete a normal workday and workweek without interruptions from psychologically based symptoms, and set realistic goals and plan independently. *Id.* Plaintiff has significant to marked limitations in his ability to communicate and perform effectively in a work setting with limited public contact and adapt to changes. *Id.*

> After discussing Dr. Bragg's opinion, the ALJ
>
>> assign[ed] limited weight to Dr. Bragg's opinion. He relied heavily on claimant's self-report and did not review any medical records aside from the DSHS report from Ms. Davick. Dr. Bragg saw the claimant on one occasion for a disability evaluation and the claimant had little incentive to present himself as employable. I note that treatment records show the claimant was doing better than Dr. (sic) Davick concluded. A report dated April 24, 2012, reflects the claimant characterized his mood as "okay" (B16F7). A report dated June 15, 2012, indicates he was psychiatrically stable (B18F11).

AR 24-25.

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). According to the Ninth Circuit, "when an opinion is not more heavily

ORDER - 6

based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (*citing Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The [MSE] allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the [MSE] is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

Dr. Bragg performed an extensive and thorough MSE, listing a number of results. AR 600-01. The MSE showed that plaintiff could remember five digits forward and three digits backward, was able to draw from memory fourteen of fifteen figures with a significant lag time, and could spell a simple word very slowly forward and backward. *Id.* Plaintiff struggled with counting backward from 100 in threes; he made multiple errors, lost his place and "slowed way down" when he made attempts to count backward by seven. AR 601. Plaintiff's fund of knowledge was mildly impaired, his thinking was abstract but with odd grammar and syntax, and his insight and judgment were impaired. *Id.* It also took plaintiff forty minutes to complete the Beck Scales, which is typically done in ten to fifteen minutes. AR 600.

In addition, Dr. Bragg reported many of his own observations. *See* AR 600. For example, Dr. Bragg observed that plaintiff's grooming and hygiene were marginally adequate, he was generally attentive and cooperative during the interview, his speech was slow, and his cognitive processing appeared sluggish. *Id.* Plaintiff mostly spoke very slowly in a soft, quivering voice.

ORDER - 7

*Id.* Dr. Bragg also noted that plaintiff's stream of mental activity was fairly logical, but sometimes odd and tangential. *Id.*

Based on a review of the relevant record, the Court concludes that Dr. Bragg's opinion of plaintiff's limitations was not largely based on plaintiff's self-reported symptoms. Rather, Dr. Bragg provided a medical source statement that was based on some medical records, Dr. Bragg's observations, the objective results of the MSE, and plaintiff's self-reported symptoms. Thus, the ALJ's finding that Dr. Bragg's assessment was based largely on plaintiff's self-reported symptoms is not supported by substantial evidence.

The ALJ also noted that Dr. Bragg saw plaintiff for a disability evaluation on one occasion and plaintiff had little incentive to present himself as employable. AR 24. An ALJ may not discredit an examining physician because the claimant has little "incentive" to present himself as employable. *Griffis v. Astrue*, 2012 WL 6757348, *6 (W.D. Wash. Dec. 10, 2012). If an ALJ were able to discredit an examining physician because there is the existence of an "incentive" to present oneself as unemployable, there would be no reason to send claimants to be examined. *Id.* This reason for discounting Dr. Bragg's opinion is not valid.

Last, the ALJ mentions that treatment notes show plaintiff is doing better than concluded by Ms. Davick because on one occasion plaintiff was noted to be stable, and plaintiff reported he was "okay" on another occasion. AR 24-25. The ALJ appears to be providing a reason for discrediting Ms. Davick's report, not the opinion of Dr. Bragg. While Dr. Bragg reviewed Ms. Davick's report, the ALJ fails to show how Dr. Bragg's opinion was affected by Ms. Davick's report. Accordingly, this reason for rejecting Dr. Bragg's opinion is not valid.

For the above stated reasons, the Court concludes that the ALJ has not provided specific and legitimate reasons that are supported by substantial evidence for giving little weight to the

ORDER - 8

opinion of Dr. Bragg.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Had the ALJ fully credited the opinion of Dr. Bragg, the residual functional capacity would have included additional limitations, as would the hypothetical questions posed to the vocational expert. As the ALJ's ultimate determination regarding disability was based on the testimony of the vocational expert on the basis of an improper hypothetical question, these errors affected the ultimate disability determination and are not harmless.

II.   The ALJ's Step Three Assessment

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R §§ 404.1520(d), 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal

ORDER - 9

a listed impairment, he or she is deemed disabled. *Id.* The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. *Id.*

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.* An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2. An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." *Id.* at *2. However, "symptoms alone" will not justify a finding of equivalence. *Id.*

Plaintiff argues that the ALJ erred in his step three assessment by failing to find plaintiff met Listing 12.04C. *See* Dkt. 12, pp. 2-6. To meet Listing 12.04C, plaintiff must show a

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04C.

ORDER - 10

The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. AR 19. Specifically in relation to Listing 12.04C, the ALJ stated that he "considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." AR 20.

Plaintiff contends that he meets the initial listing criteria for Listing 12.04C because he was previously found disabled for a closed period based on Listing 12.04 and because the ALJ found plaintiff has suffered from mood and anxiety disorders for many years and has taken medication for two decades. *See* Dkt. 12, p. 4. Plaintiff argues that he meets part C.2, and that this finding is supported by the medical opinion of Dr. Bragg. *See id.* at pp. 5-6. Dr. Bragg found that it

> is likely that [plaintiff's] inadequately responding affective symptoms would preclude his ability to work reliably. The panic attacks, agoraphobia, and poorly controlled mood cycling would be particularly problematic. Psychomotor retardation, poor eye contact, and significant emotional inhibition (including very soft and subdued voice) would also have adverse effects in any type of work environment.

AR 599. Thus, there is some evidence that a minimal increase in mental demands or change in the environment could be predicted to cause plaintiff to decompensate.

Defendant contends only that the ALJ properly rejected the opinions of Dr. Bragg and Ms. Davick, and therefore plaintiff has provided no independent basis for remand at step three. *See* Dkt. 13, p. 14. The undersigned has concluded, however, that the ALJ improperly rejected the opinion of Dr. Bragg. *See supra* Section I. As the ALJ failed to properly consider the opinion evidence of Dr. Bragg and there is some evidence that plaintiff may meet Listing 12.04C, the ALJ shall reconsider the step three analysis on remand.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") [SSR] 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*  It thus is what the claimant "can still do despite his or her limitations." *Id.*

Plaintiff argues that the ALJ erred in his determination of plaintiff's RFC. *See* Dkt. 12, pp. 17-18. The Court concludes that the ALJ improperly rejected Dr. Bragg's opinion and thus failed to include Dr. Bragg's opined limitations in the RFC assessment. *See supra* Section I. Accordingly, if on remand the ALJ does not find plaintiff has an impairment or combination of impairments that meets or equals a listed impairment, the ALJ must move to step four and assess plaintiff's RFC anew.

V.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

ORDER - 12

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Issues still remain regarding the evidence in the record concerning plaintiff's functional capabilities and his ability to perform other jobs existing in significant numbers in the national economy. Accordingly, remand for further consideration is warranted in this matter.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 25th day of March, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 13